IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JONATHAN JACOB BUCK                                                                          PLAINTIFF

v.                                CIVIL NO.        2:10-CV-002161

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                            DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Pursuant to Titles II and XVI of the Social Security Act, Jonathan Buck (Plaintiff) protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on February 16, 2005, alleging disability since December 31, 2002. His applications were denied initially and upon reconsideration. Plaintiff subsequently requested a hearing, and a hearing was held on July 29, 2008, before an Administrative Law Judge . (ALJ).[1]

---

[1] Plaintiff requested a hearing in May 2006 (T. 55). The ALJ dismissed the request for hearing after learning that Plaintiff had been arrested on a petition to revoke a suspended sentence and sentenced to three years in the ADC. (T. 49). Plaintiffs request for review of this decision was not timely filed, but the Appeals Council determined that he had good cause for late filing. On October 20,2007, the AC granted his request for review, reversed the dismissal, and ordered the ALJ to hold a hearing. (T.45).

Plaintiff, who was represented by other counsel at that time, appeared and testified at the hearing as did Karla Rozell, his mother; Penelope Thomas, his fiancee; and Sarah Moore, a vocational expert. On September 18, 2008, the AU issued a decision denying all benefits to Plaintiff (T.21) The Appeals Council (AC) denied Plaintiffs request for review of the ALJ's Decision on September 21, 2010. (T.1), Consequently, the ALJ's decision of September 18, 2008, became the final decision of the Commissioner from which this appeal is taken.

On October 20,2010, Plaintiff filed a complaint with this court for the purpose of obtaining judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. §§405(g) and 1383(c).

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III. Discussion**:

The ALJ determined that Plaintiff had severe impairments related to a personality disorder; mood disorder, attention deficit hyperactivity disorder; and left shoulder

acromioclavicular separation (Tr. 12) but determined that the Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 17).

The ALJ found that Plaintiff had mild restriction of activities of daily living; moderate difficulty with social functioning; moderate difficulty maintaining concentration, persistence, or pace (Tr. 17) and that there were no episodes of decompensation (Tr. 18) See 20 C.F.R. §§ 404.1520a and 416.920a.. The ALJ expressly considered Listing 12.04 and 12.08 (Tr. 17)and determined that the "B" criteria of the mental impairment listings were not satisfied (Tr.17-18).

## A. Listed Impairments:

The Plaintiff first contends that he met the requirements for the listed impairments of Organic Brain Disorder, 12.02; Affective Disorders, 12.04; and Personality Disorders, 12.08. Whiled each of these disorders have varying criteria in Paragraph A, they all have the common Paragraph B criteria. It is the Paragraph B criteria that the ALJ found the Plaintiff's evidence deficient.

### 1. Burden of Proof

If Plaintiffs medical condition meets or equals the criteria of one of the listed impairments, he will be considered presumptively disabled. 20 C.F.R. §404.l520(d).  The burden of proof is on Plaintiff to establish that impairments meet or equal a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-531 (1990) (superceded on other grounds); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). In order to meet a listing, the impairment must meet all of the specified criteria. *See Sullivan v. Zebley*, 493 U.S. at 530. "An impairment that manifests only some of these criteria, no matter how severely, does not qualify." Id. Medical equivalence must be based on medical findings. See 20 C.F.R. §§ 404.1526(b) and 416.926(b). The claimant "must

present medical findings equal in severity to all the criteria for the one most similarly listed impairment." *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995).

In the case of the B criteria for a mental impairment the Plaintiff must show that she has an impairment or combination of impairments resulting in at least two of the following:

   a. Marked restriction [2] of activities of daily living; or

   b. Marked difficulties in maintaining social functioning; or

   c. Marked difficulties in maintaining concentration, persistence, or pace; or

   d. Repeated episodes of decompensation, each of extended duration;

The text of the ALJ's September 18, 2008, decision documents that the ALJ applied the evaluation technique specified in 20 C.F.R.§§ 404.1520a and 416.920a, and determined that Plaintiff's impairments resulted in mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace (Tr. 17-18)and that there were no episodes of decompensation (Tr. 18). The ALJ found that the Plaintiff's impairment-related limitations did not satisfy the paragraph "B" criteria of the mental impairment listings (Tr. 17-18) and, accordingly, Plaintiff did not satisfy the requirements of Listing 12.02, or any other listing that includes the paragraph "B" criteria of the mental impairment listings.

   **2. Factual Considerations:**

      **a. Daily Activities**

The ALJ found that the Plaintiff was "able to perform all of his personal needs. He

---

[2] A limitation is considered "marked" if it is "more than moderate but less than extreme." Id. § 12.00(C).

drives, shops, occasionally mows the yard, and assist in caring for the small children from his relationship with his fiancee." (T. 17).  In the Function Report dated April 21, 2005 the Plaintiff indicated that he had no problems with personal care (T. 76), fixed his own meals, cleaned the house (T. 77), that he could walk, drive and ride in a car and shop by mail (T. 78).  He stated that his hobbies were computers and music. (T. 79).

The Plaintiff's wife testified that he went shopping with her (T. 251), had a driver's license and could drive, that he helped with the children (five) (T. 252), and could prepare simple meals. (T. 253).

These activities do not support plaintiff's claim of disability.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

The ALJ's decision that the Plaintiff has only mild restriction in his activities of daily living is supported by the record.

### b.  Social Functioning

The ALJ found that the Plaintiff had moderate difficulties in social functioning.  The ALJ acknowledged that the Plaintiff had a lengthy history of anti-social/criminal behavior. (T. 17).  According to a Case Summary prepared by Andy Kamphausen the notes reflect that in a "prior

file" containing records from June 1993 to January 1996 [3] "Documents a long h/o tx for ADHD, Impulse Control, Antisocial Bx w/ Explosive Disturbance, suicidal thoughts, aggression/ combativeness, excessive problems at home and school." (T. 197).  That same record shows that in December 1997 the Plaintiff was admitted to Timber Ridge Ranch due to angry outburst and multiple failed psychiatric placements presumably due to cerebral hypoxia during surgery at age 2. Prior to placement at Timber Ridge the Plaintiff had attacked his mother and broken her leg. (Id.).

      The Timber Ridge Psychiatric Discharge Summary diagnosed the Plaintiff with Personality change secondary to hypoxia. (T. 138).  In October 2003 the Plaintiff was see by Robert Spray, a psychologist, for an evaluation.  Dr. Spray noted that he had seen and treated the Plaintiff in 1989 because the Plaintiff had "gone after his brother with a knife, made holes in the wall with scissors, and made statements of hating his father". (T. 141).  Dr. Spray diagnosed the Plaintiff in 2003 with Affective Disorder, NOS, Impulse Control Disorder, and Antisocial Personality Disorder with avoidant features. (T. 144).

      The Plaintiff was seen by Dr. Kralik in July 2005 for a Disability Assessment: Mental Status and Adaptive Functioning Exam. (T. 156) Dr. Kralik noted that she had seen the Plaintiff many years before in the context of treatment for ADHD and he was see by Dr. Brown and Dr. Snyder (a psychiatrist) and several others on an outpatient basis.  According to Dr. Kralik Plaintiff  was placed on disability at 11 or 12 because of "severe behavioral problems" and had no indication that any of his past medication had been helpful. (T. 157).

      Dr. Kralik noted that the Plaintiff was in Charter Vista 5/94/ to 7/94, Centers for Youth

---

[3]The Plaintiff's date of birth is July 22, 1983. (T. 140).

and Families 9/94 to 4/95, Habberton House for 6-7 months in 1995, Harbor View in 1996, Bridgeway 8/97 to 10/97 , and Timber Ridge 10/97 to 5/00. (Id.).

Dr. Kralik did note that the Plaintiff had a long history of noncompliance with treatment. In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins,* 177 F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996). The evaluation of this evidence however is considered differently in cases involving mental impairment.

Evaluating mental impairments is often more complicated than evaluating physical impairments. *Obermeier v. Astrue*, Civil No. 07-3057, 2008 WL 4831712, at *3 (W.D.Ark. Nov. 3, 2008). With mental impairments, evidence of symptom-free periods does not mean a mental disorder has ceased. Id. Mental illness can be extremely difficult to predict, and periods of remission are usually of an uncertain duration, marked with the ever-pending threat of relapse. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001).  Adding to these difficulties, individuals with chronic psychotic disorders often structure their lives in a way to minimize stress and reduce their signs and symptoms. *Id*. Given the sometimes competitive and stressful conditions in which people work, individuals with mental impairments "may be much more impaired for work than their signs and symptoms would indicate." *Id.; Obermeier*, 2008 WL 4831712, at *3. Worse yet, efforts to combat mental illness present their own unique difficulties. See Pate-Fires, 564 F.3d at 945. Individuals with mental illness often refuse to take their psychiatric medication-a symptom of the illness itself, rather than an example of willful noncompliance.

In July 2005 Dr. Kralik diagnosed the Plaintiff with Attention Deficit Hyperactivity

Disorder; Combined Type, Recurrent Major Depression, Severe, Without Psychotic Features, and Antisocial Personality Disorder (with Paranoid, Narcissistic and Borderline traits). She felt that it was primarily his antisocial characteristics that "render him unwilling and/or unable to obtain and maintain steady employment" (T. 161).

Dr. Kralik saw the Plaintiff again on March 8, 2006 for a Mental Status and Adaptive Function examination. Dr. Kralik found the Plaintiff to be "significantly impaired" in the areas of Social Functioning, Personal Responsibility, and Attention, Concentration, Persistence, and Pace. (T. 173-174). Dr. Kralik stated that given the "severity and duration of the symptoms (including his strong, longstanding tendencies toward violence against self and other) and their intermittently incapacitating nature would not allow the claimant to obtain and maintain steady employment (T. 175).

The ALJ states in her support for the proposition that the Plaintiff had only moderate difficulties in social functioning was the fact that "evidence demonstrates that the claimant has the ability to follow rules and comply with conditions of probation/parole when motivated". (T. 17). The court notes however that the Plaintiff was convicted of Forgery and placed on a suspended sentence in June 2005. A Petition to Revoke that suspended sentence was filed when the Plaintiff was charged with Theft of Property, Theft of Services and Terroristic Threatening in 2006. In December 2006 the Plaintiff was sentenced to the Arkansas Department of Corrections on Theft of Property, Theft of Services and Terroristic Threatening for three years with seven years suspended. (T. 210). The Plaintiff testified that he was released from prison in June 2007 but he violated his parole and was revoked and sent back to prison in November 2007 for assault. (T. 211). He was then release from prison again in February 2008 (T. 210) and had been back

out of prison for the second time for only five months at the time of the hearing before the ALJ. It is difficult to understand why the ALJ felt the Plaintiff demonstrated any ability to follow rules of probation/parole.

It does appear that the Plaintiff obtained his GED while in prison but the medical records document that the Plaintiff may only be able to control himself when in a "structured setting" (T. 137) and the fact that he obtained a GED while in prison would be of minimal weight.

The ALJ seems to rely on the report by a non-examining psychologist Dr. Kathryn M. Gale, dated July 26, 2005.  Dr. Gale found the Plaintiff's limitations in this area to be Moderate. (T. 186).  We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. Id. *Cox v. Barnhart,*  345 F.3d 606, 610 (C.A.8 (Ark.),2003).

The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).  While Dr. Kralik may not have been a treating source at the times of her evaluation of the Plaintiff in 2005 and 2006 it is clear that she was a treating psychologist for the Plaintiff in his past and her opinions should have been given more weight that of a non-examining, non-treating consultive psychologist.

Also, it is unclear whether Dr. Kralik's characterization of "significantly impaired" would

equate to a "marked" limitation. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).

The ALJ's determination that the Plaintiff has only moderate difficulty in social functioning is not supported by the record.

### c. Concentration, Persistence or Pace

The ALJ again determined that the Plaintiff had moderate difficulties with concentration, persistence, or pace. (T. 17). The ALJ seemed to rely heavily on the fact that the Plaintiff had been given responsibility of taking care of his children. (T. 18). The Plaintiff's wife testified that he did help with the kids, baths them, feeds, them and plays with them. (T. 252). She stated that he was better since he was off of crystal meth. (Id.). A claimant's ability to perform household chores does not necessarily prove that claimant capable of full-time employment." *See Ekeland v. Bowen*, 899 F.2d 719, 722 (8th Cir.1990) (citing *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir.1989)); *Dixon v. Barnhart* 324 F.3d 997, 1002 (C.A.8 (Ark.),2003).

Dr. Kralik, on March 8, 2006, found that the Plaintiff's Attention, Concentration, Persistence, and Pace was significantly impaired for occupational purposes. While the Plaintiff appeared better than when she saw him the year before she noted that his persistence on tasks is poor, as is the motivation to even initiate tasks. (T. 174).

As noted before the ALJ makes no effort to explain why she discounted the opinion of Dr. Kralik and accepted the opinion of a non-examining, non-treating consultive evaluation.

The court finds the ALJ's decision that the Plaintiff had moderate difficulties with regard

to concentration, persistence or pace is not supported by substantial evidence.

### d. Decompensation

The ALJ found that the record did not show that the Plaintiff suffered any episodes of extended decompensation. [4] (T. 18). Decompensation is defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. Part 404 Subpt. P, App. 1, § 12.00(C)(4).

The listing defines "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00; see also Stedman's Medical Dictionary, 497 (28th ed.2006) (defining decompensation as the "appearance or exacerbation of a mental disorder due to failure of defense mechanisms"); *Zabala v. Astrue*, 595 F.3d 402, 405 (2d Cir.2010) (stating that decompensation is a temporary increase in symptoms); Kohler v. Astrue, 546 F.3d 260, 266 n. 5 (2d Cir.2008) (same). An incident-such as hospitalization or placement in a halfway house-that signals the need for a more structured psychological support system would qualify as an episode of decompensation, 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00, but so would many other scenarios. The listing recognizes that an episode may be inferred from medical records showing a significant alteration in medication, see 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00. Dr. Gale's Psyciatric Review Technique of July 2005 indicated that there were no episodes of extended decompensation (T. 186). There do not

---

[4]In psychiatry, decompensation means "failure of defense mechanisms resulting in progressive personality disintegration." Dorland's Illustrated Medical Dictionary 432 (28th ed.1994). In re Reynolds  425 F.3d 526, 531 (C.A.8 (Minn.),2005)

appear to be any medical records that document that Plaintiff experienced decompensation between the alleged onset date and the date of the ALJ's decision.

The ALJ's finding that the Plaintiff did not suffer any episodes of extended decompensation is supported by substantial evidence.

**B.  RFC**

In her RFC finding, the ALJ determined that Plaintiff could perform work at all exertional levels; can perform no overhead work with the non-dominant left upper extremity; is able to perform work activities with non-complex simple instructions that are routine, repetitive, require little judgment, and are learned by rote with few variables; can perform work that is more isolated away from the public; can perform work where superficial contact with the public and coworkers is incidental to work; and can perform work where supervision is concrete, direct, and specific. (T. 18).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v.*

*Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The only RFC in the record is performed by a non-examining, non-treating doctor. On July 26, 2005 Dr. Gale provided a Psychiatric Review Technique finding that the Plaintiff had an Organic Mental Disorder (T. 177), Affective Disorder (T. 179), and a Personality Disorder (T. 183). She determined that the Plaintiff had no marked functional limitations. (T. 186). On the same day Dr. Gale provided a Mental RFC Assessment finding that he had no marked limitations (T. 190-191) and that the Plaintiff was able to work where "interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete." (T. 192). The ALJ obviously adopted the language of Dr. Gale's assessment.

As pointed out above Dr. Kralik saw the Plaintiff on July 19, 2005and she noted that the Plaintiff had a "long history of severe mental and behavioral problems, and was seen by this examiner many years ago in the context of treatment for this and an Attention Deficit Hyperactivity Disorder" (T. 156). Dr. Kralik saw the Plaintiff again on March 8, 2006 for a Mental Status and Adaptive Function examination. Dr. Kralik found the Plaintiff to be "significantly impaired" in the areas of Social Functioning, Personal Responsibility, and Attention, Concentration, Persistence, and Pace. (T. 173-174). Dr. Kralik stated that given the "severity and duration of the symptoms (including his strong, longstanding tendencies toward violence against self and other) and their intermittently incapacitating nature would not allow the claimant to obtain and maintain steady employment (T. 175). Dr. Kralik specifically stated that

the Plaintiff could not carry out simple or complex instructions at a level typical of his peers. (T. 175).

We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. Id.; *Cox v. Barnhart* 345 F.3d 606, 610 (C.A.8 (Ark.),2003).

While Dr. Kralik may not have been a "treating physician" she had treated the Plaintiff in the past and was very knowledgeable concerning his extensive past mental treatments and conditions and the ALJ has failed to give adequate reasons for discounting Dr. Kralik's opinions. The court believes remand is necessary to allow the ALJ to further develop the record concerning the Plaintiff's mental limitations and to obtain a RFC assessment from Dr. Kralik.

IV.   **Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this September 12, 2011.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE